# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD DIVISION

| | | |
|---|---|---|
| **NORMA K. LAWHORN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 1:07-00521** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion to Remand (Document No. 12.), Defendant's Motion for Judgment on the Pleadings (Document No. 14.), and Plaintiff's Reply. (Document No. 15.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3 and 4.)

The Plaintiff, Norma K. Lawhorn (hereinafter referred to as "Claimant"), filed an application for SSI on November 2, 2004 (protective filing date), alleging disability as of June 1, 2003, due to back and spine problems, leg cramps, tailbone pain, right hip pain, a chronic stomach infection, depression, and anxiety.[1] (Tr. at 34, 41, 52.) The claim was denied initially and upon reconsideration. (Tr. at 34-36, 41-43.) On June 20, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 44.) The hearing was held on September 12, 2006, before the Honorable Karen B. Peters. (Tr. at 381-436.) By decision dated October 29, 2006, the ALJ determined that Claimant

---

[1] Claimant alleged in her Disability Report - Appeal, dated March 8, 2005, that she was disabled due to the additional impairments of anxiety, depression, and an inability to concentrate. (Tr. at 82.)

was not entitled to benefits. (Tr. at 18-27.) The ALJ's decision became the final decision of the Commissioner on June 29, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On August 21, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

2

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas

3

> (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 20, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from back pain, coccyx pain, mild ulnar neuropathy of the left arm, abdominal pain/GERD, depression, and peripheral artery disease, which were severe impairments. (Tr. at 20, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20-21, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion, as follows:

> [C]laimant has the residual functional capacity to perform light exertional work provided she is allowed a sit/stand opportunity at unscheduled times to change position. Claimant has occasional postural limitations in her ability to climb, balance, stoop, kneel, crouch, and crawl, she should avoid concentrated exposure to cold and heat, and she should avoid all vibrations, ladders and hazards. Mild neuropathy of the left arm reduces her ability to use her hands for repetitive tasks, and she has moderate difficulty in maintaining concentration, persistence or pace limiting her to simple/non-complex tasks..

(Tr. at 21, Finding No. 4.) At step four, the ALJ found that Claimant could return to her past relevant work as a novelty seller, customer service representative, and clerical worker. (Tr. at 26, Finding No. 5.) Notwithstanding the step four decision, on the basis of testimony of a Vocational Expert ("VE")

taken at the administrative hearing, the ALJ also concluded that Claimant could perform jobs such as a food service worker, at the light level of exertion. (Tr. at 26-27.) On these bases, benefits were denied. (Tr. at 26-27.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on August 6, 1953, and was 53 years old at the time of the administrative hearing. (Tr. at 26, 53, 55, 390.) Claimant had a twelfth grade education and a Generalized Equivalency Diploma. (Tr. at 26, 390-91.) In the past, she worked as a novelty seller, customer service representative, and temporary, general clerical worker. (Tr. at 26, 61-67, 391-99, 430-31.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ's misstatement of Claimant's age constitutes a material change under the Regulations and (2) the ALJ's residual functional capacity ("RFC") assessment was improper because there are inconsistencies among the ALJ's decision, the VE's testimony, and the Dictionary of Occupational Titles ("DOT"). (Document No. 13 at 2-7.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 14 at 11-17.)

1. Consideration of Claimant's Age.

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ's misstatement of Claimant's age constitutes a material change under the Regulations, requiring remand. (Document No. 13 at 2-5.) She asserts that in the decision, the ALJ considered Claimant as a younger individual at the age of 49 when Claimant filed her application. (Id. at 3.) However, Claimant states that she was 53 years of age at the time of the administrative hearing on September 12, 2006, but "is now 54 years old making her a[n] individual 'closely approaching advanced age' as defined by the grids in the Social Security System." (Id.) Claimant contends that under the Regulations, she became disabled as of her fiftieth birthday on August 6, 2003. (Id.) She asserts therefore, that this change in age, or borderline age situation, requires remand. (Id. at 4-5.)

The Commissioner asserts that the ALJ misstated Claimant's age as a younger individual in

7

her decision is of no consequence. (Document No. 14 at 11-13.) The Commissioner states that the ALJ was not required to consider Claimant's age when determining whether she could perform her past relevant work because "age is only a vocational factor at the fifth step of th sequential evaluation process when the Medical-Vocational Guidelines, based in part on age, are considered." (Id. at 11 n.2.) Nevertheless, to the extent that the ALJ referred to Medical-Vocational Rule 202.20 in her decision, the Commissioner contends that the result under Rule 202.13, which considers an individual closely approaching advanced age, would yield the same result as Rule 202.20. (Id. at 12.) Thus, the ALJ's reference to Rule 202.20 in her decision is harmless error. (Id.)

The Commissioner further asserts that at the administrative hearing, the ALJ considered Claimant's age as she confirmed it at that time, fifty three years of age, and asked the VE hypothetical questions based on Claimant's age as of the date of the hearing. (Document No. 14 at 11-12.) The VE's identification of other work that Claimant could perform therefore, was premised on Claimant's age at the time of the hearing. (Id. at 12.)

The Court agrees with the Commissioner and finds Claimant's argument on this point unavailing. As discussed above, the Regulations provide a sequential analysis for adjudicating disability. See 20 C.F.R. § 404.1520 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). At step four, if it is determined that a claimant can perform her past relevant work, her vocational factors of age, education and work experience and whether her past relevant work exists in significant numbers in the national economy, factors that are considered at step five, are not considered. See 20 C.F.R. § 404.1560(b)(3) (2006). The ALJ found at step four that Claimant was able to return to her past relevant work. Consequently, the ALJ was not required to consider Claimant's age and other vocational factors.

Notwithstanding this finding, the Court finds that to the extent that the ALJ considered

Claimant's age at step five of the sequential analysis, such consideration was based on Claimant's age as she confirmed it at the administrative hearing, age fifty-three. At the beginning of the administrative hearing, Claimant testified that her date of birth was August 6, 1953. (Tr. at 390.) In presenting hypothetical questions to the VE, the ALJ asked the VE to "assume a hypothetical individual of the claimant's age, education, [and] background as has been described here today." (Tr. at 431.) It is clear that the ALJ was aware that Claimant was fifty-three years of age at the time of the administrative hearing and that she asked the VE to assume an individual that was fifty-three years of age. The fact that the ALJ stated in her decision that Claimant was forty-nine years of age when she filed her application does not displace the ALJ's knowledge that Claimant was fifty-three years of age at the time of the hearing. However, as Claimant correctly points out, the ALJ referenced in her decision Medical-Vocational Rule 202.20, which presupposes a younger individual, less than 50 years of age. (Tr. at 26.) Nevertheless, as the Commissioner notes, application of Medical-Vocational Rule 202.13, which assumes an individual closely approaching advanced and leaves all other factors as stated in Rule 202.20 the same, yields a finding of not disabled. Consequently, to the extent that the ALJ may have misstated Claimant's age in her decision, such error is harmless.

2. Conflict Between the VE's Testimony & the ALJ's Decision.

Claimant further alleges that the Commissioner's decision is not supported by substantial evidence because the VE's testimony conflicts with the ALJ's decision and the DOT in two respects. (Document No. 13 at 5-7.) First, Claimant alleges that the VE's testimony is inconsistent with the DOT because the DOT "does not consider a sit/stand option." (Id. at 6.) Second, Claimant alleges that the VE classified Claimant's past relevant work at a temporary agency as that of "temporary situations," which is not contained in the DOT. (Id.)

The Commissioner asserts that there is no conflict between the VE's testimony and the DOT,

9

and contends that Claimant missed the point of vocational expert testimony. (Document No. 14 at 13-14.) The Commissioner further asserts that the ALJ's RFC assessment is supported by substantial evidence of record. (Id. at 14-17.)

In her Reply, Claimant's counsel asserts:

As to the "sit/stand option: the Plaintiff, by counsel, will concede that all Vocational Experts have the right to determine, if assessed by the presiding Administrative Law Judge, the sit/stand option, therefore, if the Plaintiff was talking about the "sit/stand option" and only the "sit/stand option," the Defendant would be correct in its Brief in Support of Judgment on the Pleadings, filed January 31, 2008.

(Document No. 15 at 2.) In view of the Claimant's foregoing statement, the Court finds that Claimant concedes that the ALJ and VE properly assessed a sit/stand option, which was not reflected in the DOT. Accordingly, the Court makes no further assessment of this issue and finds Claimant's claim to be without merit.

Regarding the second aspect of this claim, Claimant correctly points out that the ALJ's decision contains some inconsistencies. At step four of the sequential analysis, the ALJ found that Claimant "is able to perform past relevant work." (Tr. at 27, Finding No. 5.) In support of this finding, the ALJ stated: "The claimant has past relevant work in novelty sales, customer service representative and unskilled clerical work. The vocational expert testified that claimant could perform her past relevant work. The undersigned has also resolved the case under Finding 9 below." (Tr. at 26.) At step five, Finding Number nine, the ALJ found that in considering Claimant's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. at 26, Finding No. 9.) In support of this finding however, the ALJ stated that in light of the hypothesized nonexertional limitations, which were adopted by the ALJ, the VE testified that such a hypothetical person "would be able to perform the requirements of representative occupations such as claimant's *unskilled past*

10

*relevant work* listed above (95,000 jobs in the United States and 67,000 jobs in the region) and food service (85,000 jobs in the United State[s] and 3,200 jobs in the region)." (Tr. at 26.) (Emphasis added). The ALJ noted that pursuant to SSR 00-4p, the VE's testimony was consistent with the DOT. (Tr. at 27.)

During the administrative hearing, the VE classified Claimant's past relevant work to include novelty sales at the light exertional, semi-skilled levels, and customer service representative at the sedentary exertional, semi-skilled levels. (Tr. at 430-31.) Regarding Claimant's past work for a company hiring out temporary workers, the VE generally classified this work as unskilled clerical work at the light exertional level. (Tr. at 431.) Despite Claimant's argument that the DOT contains no listings for "temporary situations," the DOT clearly contemplates clerical work. Claimant's arguments regarding the absence of DOT listings therefore, is without merit.

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 429-35.) The ALJ first asked whether Claimant was capable of performing her past relevant work if she required a frequent sit/stand option at unscheduled times throughout the workday. (Tr. at 431.) The VE responded that Claimant would not be able to perform any of her past relevant work. (Id.) The ALJ then asked whether a person of Claimant's age, education, and background, who was limited to performing fairly simple, non-complex tasks at the light exertional level with a sit/stand option at unscheduled times for a brief, routine change in position; a mild reduction in the use of her hands for repetitive work; a moderate reduction in concentration; could never climb ladders; and could occasionally balance, kneel, crouch, crawl, and stoop, could perform Claimant's past relevant work. (Tr. at 431-32.) In response to the ALJ's hypothetical question, the VE responded that such a person could perform the past temporary work, which the VE generically classified as unskilled clerical work, as well as the additional job of a food

service worker. (Tr. at 432-34.) The VE testified that regionally, there were approximately 6,000 to 7,000, and nationally 95,000 organizations and employers that employed the temporary unskilled clerical workers described above. (Tr. at 433.)

In assessing Claimant's RFC, the ALJ determined that Claimant was capable of performing light exertional work with a sit/stand option at unscheduled times to change positions. (Tr. at 21.) He further assessed occasional postural limitations in Claimant's ability to climb, balance, stoop, kneel, crouch, and crawl, and indicated that she should avoid concentrated exposure to cold and heat, and avoid all exposure to vibrations, ladders, and hazards. (Id.) The ALJ determined that the mild neuropathy of Claimant's left arm reduced her ability to use her hands for repetitive tasks and that her moderate difficulty in maintaining concentration, persistence, or pace, limited her to simple, non-complex tasks. (Id.) The ALJ's RFC therefore, is consistent with the hypothetical question presented to the VE.

Based on the foregoing, it is clear that the ALJ's decision that Claimant could perform her past relevant work, which decision the ALJ stated was predicated on the VE's testimony, actually is inconsistent with the VE's testimony. The VE did not testify in response to the hypothetical question that the hypothetical person could perform Claimant's past relevant work as a novelty seller and customer service representative as the ALJ stated in her decision. At step five of the sequential analysis, the ALJ specifically noted the VE's testimony that Claimant could perform only her unskilled past relevant work. (Tr. at 26.) Nevertheless, because the ALJ included the unskilled temporary, clerical work position in her step four finding, the Court finds that any error the ALJ may have committed is harmless. Accordingly, to the extent that Claimant contends the ALJ's decision is inconsistent with the VE's testimony, the Court finds that Claimant's argument is without merit.

Additionally, Claimant's brief makes reference to the VE's and the ALJ's failure to identify

specific DOT numbers for the jobs identified. (Document No. 13 at 6.) Claimant's brief indicated that she reviewed the DOT and concluded that there were eight possible jobs that could be considered under the label of food service worker and temporary worker. (Id. at 6-7.) Of these eight jobs however, Claimant alleges that though the ALJ reduced Claimant's ability to finger and reach for repetitive tasks as a result of her neuropathy, this limitation does not equal the limitation of fingering and reaching on a significant basis according to the DOT. (Id. at 7.) Although the VE did not provide DOT numbers for the jobs identified, she testified that the information provided was consistent with the DOT. The Regulations state that the DOT is not the sole source for occupational information. See 20 C.F.R. §§ 404.1566(d); 416.966(d) (2006). The VE in this case was subject to cross-examination by Claimant's attorney, and the ALJ found the VE credible, a finding which was within her province to determine. See Barker v. Shalala, 40 F.3d 789 (6th Cir. 1994). Accordingly, the Court finds that Claimant's argument is without merit.

To the extent that Claimant challenges the ALJ's RFC assessment, the Court further finds that her argument is without merit. At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting,

13

after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2) (2006). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." Id. § 404.1527(b).

As discussed above, the ALJ considered Claimant's complaints of numbness in her fingers and right shoulder pain resulting from mild ulnar neuropathy by not requiring her to use her hands for repetitive work. (Tr. at 21.) On November 15, 2005, an EMG/NCS, ordered by Dr. Rana, Claimant's treating physician, was mildly abnormal, revealing mild ulnar neuropathy at the elbows bilaterally. (Tr. at 23, 213.) The studies however, did not reveal any carpal tunnel syndrome, peripheral neuropathy, or lumbar radiculopathy of the right lower extremity. (Id.) As the ALJ noted, Dr. Rana's most recent progress note demonstrated normal strength and sensation of Claimant's upper extremities. (Tr. at 23, 320, 336.) Dr. Rana's consultation report dated October 21, 2005, demonstrated normal muscle strength in all muscle groups, normal sensation to light touch and pin prick all over her body. (Tr. at 23, 336.) Dr. Rana referred Claimant to Jeffrey Greenberg, M.D., for

a neurological consult, which revealed essentially normal results. (Tr. at 24, 357-58.) On June 26, 2006, Dr. Greenberg noted Claimant's complaints of coccyx and right hip pain and occasional numbness of her hands, legs, and feet. (Tr. at 24, 357.) On examination, Claimant exhibited a negative straight leg raise; normal motor function of her upper and lower extremities, gait, tandem walk, range of cervical and lumbar spine motion; and that she was able to toe and heel walk bilaterally, without difficulty. (Tr. at 24, 358.) Based on the normal examination, Dr. Greenberg reported that "[f]rom a neurosurgical standpoint there is really nothing I can offer." (Id.)

Claimant testified that she was able to use her hands to sew gifts for her children, though it took her a while to complete each project. (Tr. at 424.) She further testified that she smoked one and one half packs of cigarettes a day, and thus, was able to use her hands to hold cigarettes throughout the day. (Tr. at 427.) Furthermore, Claimant testified that she played games on a computer and that she care for her grandchildren, whom she watched at least two days a week in July, 2006, including feeding them. (Tr. at 420.) The ALJ therefore, found Claimant's testimony credible to the extent that she had a mild impairment and restricted the use of her hands for repetitive use. (Tr. at 23.) The Court finds, as the Commissioner suggests, that these minimal medical findings combined with Claimant's use of her hands, indicate that the ALJ's restriction on repetitive use of her hands accommodated any limitation Claimant may have experienced from her mild ulnar neuropathy.

The Court further finds that the ALJ's assessed limitations regarding Claimant's back, coccyx, and hip pain; abdominal pain and GERD; and depression are supported by substantial evidence. The ALJ acknowledged Claimant's history of back, coccyx, and hip and leg pain, and her alleged inability to sit, stand, or walk for any length of time. (Tr. at 22, 400-02, 404-05, 417, 422-23.) Claimant reported that due to her pain, she could not sweep, mop, vacuum, or drive, and that she required the use of a wedge when sitting. (Tr. at 22, 401-02.) A MRI scan of Claimant's thoracic and lumbar spine

15

however, on June 2, 2004, demonstrated only mild degenerative changes with no herniation. (Tr. at 23, 120.) Further MRI scan of Claimant's lumbar spine and right hip on May 26, 2006, revealed only minimal bilateral disc bulging at L4–5 and left lateral bulging at L3-4, with no effect on the nerve roots or any evidence of herniated discs or spinal stenosis. (Tr. at 262.) The scan further revealed that Claimant's sacrum, coccyx, and right hip were normal. (Id.) A bone scan conducted on April 13, 2005, essentially was normal, and x-rays of the sacrum and coccyx on the same date showed only degenerative changes. (Tr. at 23, 200-01.) A bone mineral densitometry on December 7, 2005, revealed borderline osteopenia. (Tr. at 23, 222.)

Claimant submitted to the Appeals Council a further MRI scan of her cervical spine conducted on February 12, 2007. (Tr. at 380.) This scan however, revealed only minimal C5-6 spondylosis and bilateral C6 uncinate without central, lateral, or foraminal stenosis; and a two millimeter offset of the C2 on C3 vertebral bodies, not likely to have been of any clinical significance. (Id.) The MRI did not reveal any herniated discs, stenosis, or impingement of the nerve root at any level. (Id.) The Court therefore finds that this MRI does not constitute new and material evidence because it is not likely that it would change the ALJ's decision.[3] As discussed above, the clinical findings essentially were normal. The Court further notes that Claimant testified that she walked to her mother's house two to three times a week and that her physician advised her to walk.

---

[3] To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). In *Borders*, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. *Id.*

16

(Tr. at 25, 417.) Accordingly, the ALJ properly accommodated Claimant's musculoskeletal complaints by limiting her to performing light exertional work with a sit/stand option and occasional postural limitations.

Regarding Claimant's abdominal pain and GERD, the Court finds that the ALJ noted Claimant's diagnoses of abdominal pain and esophageal disorders and gave controlling weight to these diagnoses and Claimant's testimony to the extent that she had these impairments. (Tr. at 24.) On February 7, 2005, a CT scan revealed mild constipation with occasional small benign bilateral renal cortical cysts. (Tr. at 24, 191.) Due to Claimant's complaints of chronic right lower quadrant pelvic pain, she underwent a laprascopic procedure on October 17, 2005, which essentially was normal. (Tr. at 24, 220.) As the ALJ found there was nothing in the record to suggest that Claimant's abdominal pain and GERD resulted in a disability or any limitations beyond those assessed by the ALJ.

Finally, the Court finds that the ALJ properly assessed the limitations resulting from Claimant's depression. The medical evidence reveals that Claimant was treated at Southern Highlands Community Mental Center, beginning in August 17, 2005, primarily by Alina Vrinceanu, M.D., who diagnosed major depressive disorder. (Tr. at 24-25, 243-59, 363-74.) The progress notes from Southern Highlands demonstrates that throughout treatment, Claimant consistently was assessed with a GAF of 60, which was indicative of only moderate difficulties.[4] (Tr. at 24-25, 243, 246, 250, 252, 258, 363, 368, 373.) On August 28, 2006, one of the last progress notes of record, Claimant reported that she felt "half human again." (Tr. at 25, 363.) On mental status exam, Dr. Vrinceanu

---

[4] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

noted that Claimant had direct eye contact, a depressed mood, constricted affect, appropriate and goal-directed speech, improved sleep, decreased appetite with weight loss, no suicidal or homicidal ideation, logical and goal-directed stream of thought, appropriate and informative content of thought, good insight and judgment, and fair memory. (Tr. at 25, 363-64.) Dr. Vrinceanu noted that Claimant's condition had improved with medication and he again assessed a GAF of 60. (Tr. at 25, 363-64.)

On August 28, 2006, Dr. Vrinceanu completed a Psychiatric Review Technique Form ("PRTF") and Mental Residual Functional Capacity Assessment. (Tr. at 25, 263-65, 266-79.) On the PRTF, Dr. Vrinceanu opined that Claimant's depressive syndrome resulted in no limitations of activities of daily living, moderate limitations in maintaining social functioning, and marked limitations in maintaining concentration, persistence, and pace. (Tr. at 25, 266-79.) On the Mental RFC assessment, Dr. Vrinceanu opined that Claimant was moderately limited in her ability to remember locations and work-like procedures, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (Tr. at 25, 263-64.) Dr. Vrinceanu further opined that Claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods of time; and work in coordination with or proximity to others without being distracted by them. (Id.)

The ALJ rejected Dr. Vrinceanu's opinion that Claimant had marked limitations in maintaining concentration, persistence, or pace because the opinion was inconsistent with her progress notes from the day the opinion was rendered, it was inconsistent with the Southern Highlands treatment history, and it was inconsistent with the repeated assessed GAF of 60. (Tr. at

25.)

The medical record further contains a PRTF and Mental RFC Assessment by H. Hoback Clark, M.D., dated May 21, 2005. (Tr. at 25, 173-76, 177-90.) On the PRTF, Dr. Clark opined that Claimant's depressive syndrome resulted in mild limitations of activities of daily living and moderate limitations in maintaining social functioning, concentration, persistence, or pace, with no evidence of any episodes of decompensation. (Tr. at 25, 177-90.) On the Mental RFC Assessment, Dr. Clark opined that Claimant was only moderately limited in her ability to interact appropriately with the general public and to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 25, 173-74.)

The ALJ rejected the further opinion of Lisa C. Tate, M.A., on May 6, 2005, that Claimant's ability to maintain social functioning was severely deficient. (Tr. at 25, 164.) The ALJ found that Ms. Tate's opinion was inconsistent with the record as a whole and was inconsistent with the opinions of Dr. Clark and Claimant's treating source, Dr. Vrinceanu. (Tr. at 25.) Based on the foregoing, the ALJ determined that Claimant's mental impairments resulted in mild limitations of activities of daily living, moderate limitations in maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 21.) In assessing Claimant's RFC, the ALJ limited Claimant to performing simple, non-complex tasks based on her moderate difficulty in maintaining concentration, persistence, or pace. (Id.) The Court finds that the ALJ's RFC assessment regarding Claimant's mental impairments is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Remand (Document No. 12.) is **DENIED**, Defendant's

Motion for Judgment on the Pleadings (Document No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 18, 2008.

R. Clarke VanDervort
United States Magistrate Judge